IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CHRISTIAN ISRAEL LAVANDERA-          )
HERNANDEZ,                           )
                                     )
          Petitioner,                )
                                     )
          v.                         )          1:12-cv-553
                                     )
DUANE TERRELL, Superintendent        )
of Marion Correctional               )
Institute; ROBERT C. LEWIS,          )
Director of Prisons; AND             )
THEODIS BECK, Secretary of           )
Department of Corrections,           )
                                     )
          Respondents.               )

**<u>MEMORANDUM OPINION AND ORDER</u>**

THOMAS D. SCHROEDER, District Judge.

        Before the court is a habeas petition filed by Petitioner
Christian Israel Lavandera-Hernandez ("Petitioner") pursuant to
28 U.S.C. § 2254. (Doc. 2.) Respondents Duane Terrell (the
Superintendent of North Carolina's Marion Correctional
Institute), Robert C. Lewis (Director of Prisons for North
Carolina's Department of Corrections), and Theodis Beck
(Secretary of the N.C. Department of Corrections) (collectively,
"Respondents") have moved for summary judgment (Doc. 6), and the
Petitioner has responded (Doc. 13). The matter is now ripe for
decision. After careful consideration and review of the record,
and for the reasons set forth below, Respondents' motion for

summary judgment will be granted and the petition will be denied.

## I.    BACKGROUND

Petitioner is a prisoner of the State of North Carolina and is incarcerated at the Marion Correctional Institute ("MCI"). On May 25, 2010, Petitioner pleaded guilty in the Superior Court of Guilford County, North Carolina, to five counts of first-degree rape of a child and six counts of indecent liberties with a child. (Case Nos. 10 CRS 68876-86, Superior Court of Guilford County, North Carolina.) Petitioner was sentenced pursuant to a plea agreement to a consolidated mitigated range sentence of 192 to 240 months of imprisonment and a lifetime of satellite-based monitoring after completion of his prison sentence.

On or about May 25, 2011, Petitioner filed a *pro se* Motion for Appropriate Relief (MAR)[1] in the Superior Court of Guilford County, alleging ineffective assistance of counsel, defects in the indictments against him, due process violations, and unlawful imposition of satellite-based monitoring. (Doc. 8, Exs. 7-8.) On July 29, 2011, the superior court denied the MAR. (Id., Ex. 9.) On February 21, 2012, Petitioner filed a *pro se* certiorari petition in the North Carolina Court of Appeals. (Id., Ex. 10.) Certiorari was denied on March 5, 2012. (Id.,

---

[1] Although the exact date of filing is unknown, the MAR's certificate of service is dated May 18, 2011. (Doc. 8, Ex. 7 at 7.)

2

Ex. 12.)

On June 1, 2012, the clerk of this court received petitioner's *pro se* federal habeas petition. (Doc. 2, Ex. 1.) The petition is dated March 5, 2012. (Doc. 2.) However, the prison mail log from MCI shows that Petitioner presented his petition for mailing to this court on May 29, 2012. (Doc. 8, Ex. 13.) Further, the back of the envelope containing Petitioner's habeas petition bears a notation that reads: "C./o. T Cole 5/28/12." (Doc. 2, Ex. 1.) Also on the back of the envelope in a corner is the notation "3-5." (Id.) Petitioner asserts that he delivered his petition to the MCI guard for mailing on March 5, 2012 and that this second notation reflects as much. (Doc. 14 at 6.)

## II. ANALYSIS

### A. Standard of Review

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A genuine dispute as to a material fact exists when there is sufficient evidence on which a reasonable jury could return a verdict in favor of the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). But where an adverse party "fails to bring forth facts showing that reasonable minds could differ on a

3

material point then, regardless of any proof or evidentiary requirements imposed by the substantive law, summary judgment, if appropriate, shall be entered." Bouchat v. Balt. Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir. 2003) (internal quotation marks, alteration marks, and citations omitted).

The normal standard for assessing a summary judgment motion does not always apply in the habeas context, although habeas cases are still subject to a summary judgment analysis as in any other civil case. See Rules Governing Section 2254 Cases in the United States District Courts, Rule 12; see also Maynard v. Dixon, 943 F.2d 407, 412-13 (4th Cir. 1991). Notwithstanding summary judgment standards, the court must examine the provisions of 28 U.S.C. § 2254 in determining whether habeas relief is proper.

Petitioner seeks a writ of habeas corpus pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d). (Doc. 2.) Under section 2254(d)(1), an application for a writ of habeas corpus shall not be granted unless the state court adjudication on the merits "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." A state court unreasonably applies Supreme Court law when it "identifies the correct governing legal principle . . . but unreasonably applies

4

that principle to the facts of the prisoner's case." <u>Williams</u> <u>v. Taylor</u>, 529 U.S. 362, 413 (2000) (opinion of O'Connor, J., for the Court). "[T]he state court's decision must have been more than incorrect or erroneous[,] . . . [it] must have been 'objectively unreasonable.'" <u>Wiggins v. Smith</u>, 539 U.S. 510, 520-521 (2003) (citation omitted).

### B. Statute of Limitations

Respondents move initially to dismiss the petition on the ground it was untimely.

Habeas petitions filed under section 2254 are subject to a one-year period of limitation. 28 U.S.C. § 2244(d)(1). This period generally begins to run from the date on which the judgment of conviction becomes final[2] by the conclusion of direct review or the expiration of time for seeking direct review. <u>Id.</u> § 2244(d)(1)(A). The one-year filing period is tolled while an inmate's "properly filed application for State post-conviction

---

[2] The statute of limitations for filing a § 2254 petition begins to run on the latest of four dates: "(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action; (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1). In this case, only the first of these is at issue.

or other collateral review" is "pending." 28 U.S.C. § 2244(d)(2); see Wall v. Kholi, 131 S. Ct. 1278, 1281, 1288–89 (2011).

In this case, Petitioner's judgment of conviction became final on May 25, 2010, the date of his guilty plea and judgment, because his minimum imposed sentence (192 months) fell below the applicable presumptive sentencing range (Class B1 felony; prior record level I). See N.C. Gen. Stat. § 15A-1444(a1) (limiting right of appeal from guilty plea when defendant's minimum sentence of imprisonment falls within the presumptive range for the defendant's prior record or conviction level and class of offense); id. § 15A-1340.17(c) (showing that for a Class B1 felony at prior record level I, *mitigated* sentence (even lower than presumptive) will have a minimum of between 144 and 192 months); and (Doc. 8, Ex. 3 at 2 (showing that Petitioner was sentenced to a mitigated sentence with a minimum of 192 months of imprisonment); see also Hairston v. Beck, 345 F. Supp. 2d 535, 537 (M.D.N.C. 2004) ("Because this sentence was lower than the presumptive range of minimum sentences, Petitioner had no appeal as of right.").[3] As such, the statute of limitations began running immediately upon the entry of judgment and ran for

---

[3] Even if Petitioner had possessed a right to appeal, this right would have expired 14 days after the trial court's entry of judgment against him. See N.C. R. App. P., Rule 4(a)(2). In this case, those 14 days would not ultimately affect the timeliness analysis.

358 days until the filing of Petitioner's *pro se* MAR on May 18, 2011.[4] The one-year period then remained tolled under 28 U.S.C. § 2244(d)(2) through the superior court's denial of the MAR, Petitioner's filing of his certiorari petition with the North Carolina Court of Appeals and that court's denial of certiorari on March 5, 2012. See Hernandez v. Caldwell, 225 F.3d 435, 438 (4th Cir. 2000) (the time period between denial of the MAR and denial of certiorari petition is tolled). As such, Petitioner agrees that his one-year limitations period resumed March 5, 2012, and expired seven days later on March 14, 2012. (See Doc. 14 at 5-6.) However, Petitioner's habeas petition was not received by the clerk of this court until June 1, 2012. (Doc. 2, Ex. 1.)

Petitioner alleges that, pursuant to the prison-mailbox rule, he deposited his habeas petition with prison officials on March 5, 2012, and therefore the statute of limitations is satisfied. See Rules Governing Section 2254 Cases in the United States District Courts, Rule 3(d) (describing the prison-mailbox rule and stating that a paper is properly filed by an inmate if timely deposited in the prison institution's internal mailing system). To corroborate this, Petitioner points to the envelope

---

[4] Although a MAR is not considered received until it is actually filed in the superior court and served on the district attorney, N.C. Gen. Stat. § 15A-1420(a)(3), in this case the court agrees with Respondents that it is acceptable to use the date appearing on the MAR's certificate of service because the record does not establish another date. (See Doc. 8 at 4 n.2.) Use of this date favors Petitioner.

containing his habeas petition, which in one corner has the notation "3-5." (Doc. 14 at 8, apparently referencing Doc. 2, Ex. 1.) Respondents point out that the North Carolina Court of Appeals denied certiorari on March 5, 2012, and it is therefore "logically impossible" for Petitioner to have received the court's ruling, prepared his over one-hundred page petition, and then deposited it with a correctional officer for mailing all in the same day. (Doc. 8 at 5-6.) Respondent also points to an unauthenticated copy of what it contends is MCI's internal mail log, which shows receipt of Petitioner's mail on May 28, 2012. (Doc. 8, Ex. 13.) Petitioner counters in his verified opposition that he had access to the North Carolina Court of Appeals' ruling through MCI's internet and that he did in fact deliver his petition to a correctional officer on March 5, 2012. (Doc. 14 at 8-10.)

According to Petitioner, prison procedures at MCI dictate that an inmate hand deliver mail to a correctional officer. (Id. at 7.) The correctional officer will then seal the document and place his initials and the date on the back of the envelope. (Id.) It then becomes the responsibility of the correctional officer to deliver the sealed document to the mailroom. (Id.)

Petitioner asserts that the envelope in which his habeas petition was mailed and which bears the notation "3-5" in one

8

corner confirms that it was received by a correctional officer on March 5. However, as the State points out, this is contradicted by the notation "C./o. T Cole 5/28/12" in the center of the envelope. This latter notation is more consistent with the practice described by Petitioner, as it contains a date (presumably that the document was received from Petitioner) directly adjacent to the correctional officer's name/signature. Even though the envelope does not fully support Petitioner's version of MCI's procedures for recording receipt of an inmate's mail, Petitioner's sworn statement that he delivered the petition to the MCI correctional officer on March 5, 2012 creates a fact issue that turns in part on Petitioner's credibility and is sufficient to prevent the granting of Respondents' motion for summary judgment on this basis. However, because the court determines that it can resolve Petitioner's claims on the merits and thus avoid the necessity of an evidentiary hearing, it turns to those claims now. See Holland v. Florida, 130 S. Ct. 2549, 2560 (2010) (stating that AEDPA statute of limitations is not jurisdictional); Trussell v. Bowersox, 447 F.3d 588, 590 (8th Cir. 2006) (noting that because the statute of limitations defense is not jurisdictional, the court can proceed to the merits of claims in the interest of judicial economy).

## C.   Petitioner's Claims

In his habeas petition, Petitioner contends: (1) his indictments were invalid and defective; (2) he received ineffective assistance of counsel; (3) his guilty plea was in violation of due process; and (4) his lifetime satellite-based monitoring requirement violates due process and constitutes cruel and unusual punishment.  The MAR court addressed these contentions in its 2011 Order and found each to be without merit (Doc. 8, Ex. 9), and the court will accordingly address whether the MAR Order "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

### 1.   Alleged Invalidity of Indictments Against Petitioner

Petitioner claims that the indictments against him were defective because: (1) they failed to accurately and clearly allege all the constituent elements of the offenses; (2) the dates of the offenses listed lack specificity; and (3) the evidence presented to the grand jury was not trustworthy.  (Doc. 2 at 26 (incorporating Petitioner's prior collateral attacks).) However, federal habeas relief is unavailable to retry issues of state law, and a federal court may not issue a habeas writ on a perceived error of state law.  Pulley v. Harris, 465 U.S. 37, 41

10

(1984).  As such, deficiencies in state court indictments are not ordinarily the basis for habeas relief unless the deficiencies made the proceedings so egregiously unfair as to amount to a deprivation of a defendant's right to due process. Ashford v. Edwards, 780 F.2d 405, 407 (4th Cir. 1985).  As no egregious unfairness has been alleged (nor can be identified by the court), this claim will be dismissed.

However, because the validity of the indictments is germane to Petitioner's claim that his counsel was ineffective for not challenging them, as addressed infra, the court will address them.  After reviewing the indictments against Petitioner, the court concludes that the facts and elements alleged are sufficient pursuant to N.C. Gen. Stat. § 15-144.1 (rape) and N.C. Gen. Stat. § 14-202.1 (indecent liberties).  Further, the indictments set forth the time period during which each crime occurred as January 1, 2002 to November 12, 2005, and this is legally sufficient.  State v. Crockett, 138 N.C. App. 109, 112, 530 S.E.2d 359, 362 (2000) (indictment need only set out a period of time in which the offense is alleged to have occurred).  As such, the Petitioner's first claim will be denied.[5]

---

[5] Additionally, Petitioner is unable to challenge the legal sufficiency of the evidence before the grand jury.  By pleading guilty, Petitioner waived any right to attack the sufficiency of the evidence at the grand jury proceedings.  Covert v. O'Dea, 178 F.3d 1293, at *2 (6th Cir. 1999) (unpublished Table decision) (noting that the petitioner,

## 2. Ineffective Assistance of Counsel

The standard for assessing an ineffective assistance of counsel claim is well-settled. A petitioner must show (1) counsel's deficient performance and (2) that such deficient performance was so serious that it denied the petitioner a fair trial whose result was reliable. Strickland v. Washington, 466 U.S. 668, 687 (1984). In the context of a guilty plea, the Supreme Court has determined that counsel's deficient performance meets the Strickland standard only if there is a reasonable probability that, but for counsel's errors, the petitioner would not have pleaded guilty and would have instead insisted on going to trial. Hill v. Lockhart, 474 U.S. 52, 59 (1985). This is an objective inquiry that is dependent on the likely outcome of a trial had the petitioner not pleaded guilty. Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007). Where the issue is whether the state court has unreasonably applied Strickland standards to a claim of ineffective assistance of counsel, as it is here, "'double deference' is required – deference to the state court judgment granting deference to trial counsel's performance." Burr v. Lassiter, No. 12-4, 2013

---

after pleading guilty, cannot attack the sufficiency of the evidence that was before the grand jury). Petitioner's "declaration of guilt at the plea hearing cannot be overcome by subsequent incredible allegations." Id.; see also Doss v. North Carolina, 252 F. Supp. 298, 306 (M.D.N.C. 1966) (holding that a petitioner, after pleading nolo contendere, could not challenge his indictment on the grounds that the evidence presented to the grand jury was "incompetent").

12

WL 871190, (4th Cir. Mar. 11, 2013). As the Supreme Court cautioned, "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Harrington v. Richter, 131 S. Ct. 770, 788 (2011).

In this case, Petitioner has alleged multiple wrongs covering his trial counsel's entire representation that he avers meet the Strickland and Lockhart standards. Specifically, Petitioner claims that his counsel (1) failed to file a motion to dismiss charges based on defective indictments; (2) failed to challenge the testimony of the State's witnesses; (3) failed to file a motion to dismiss Petitioner's testimony because he invoked his Fifth Amendment privilege and requested an attorney and translator; (4) failed to explain the consequences of the guilty plea and to "champion" a sentence of 144 months; (5) failed to obtain a sentence at the bottom of the mitigated range; (6) failed to explain the plea's potential immigration and deportation consequences; (7) failed to invoke Petitioner's rights under the Vienna Convention; (8) failed to object to the imposition of satellite-based monitoring requirements; (9) failed to obtain an interpreter approved by the Administrative Office of the Courts; and (10) failed to investigate the alleged charges. (Doc. 2 at 19-20.)

The first of basis for an ineffective assistance of counsel claim relates to counsel's failure to dismiss the "defective indictments" against Petitioner. (Id. at 19.) But as previously discussed, the indictments against Petitioner were not defective (see supra Part II.C.1), and therefore counsel's failure to dismiss them could in no way constitute ineffective representation. The MAR court did not unreasonably apply clearly established federal law when it determined that this contention was without merit.

The next set of Petitioner's grievances can be classified as those relating to Petitioner's plea agreement, its consequences, and its factual basis. These contentions are without merit. The court has reviewed the Spanish/English Transcript of Plea and finds that Petitioner swore in open court that his lawyer had explained the nature of the charges against him (Doc. 8, Ex. 2 at 2), explained every element of each charge (id.), and discussed potential defenses (id.). See also id. ("Are you satisfied with your lawyer's legal services? . . . Yes.") Petitioner was also informed, and confirmed that he understood, that his plea would entail immigration consequences, including deportation. (Id. at 3.) Petitioner's sworn statements and the Transcript of Plea are entitled to a presumption of correctness, and Petitioner fails to cast any doubt on their veracity. See Little v. Allsbrook, 731 F.2d 238,

14

239 n.2 (4th Cir. 1984) (noting that in the absence of clear and convincing evidence to the contrary, a defendant is bound by what he said at the time of a guilty plea; defendant's sworn answers to inquiries as to whether he had discussed the case fully with counsel were not "empty gestures").[6]

In addition, Petitioner, the prosecutor, and Petitioner's attorney all explicitly confirmed to the court that the plea agreement exposed Petitioner to a sentence of 192-240 months, which is the exact sentence that was actually imposed by the superior court judge. See (Doc. 8, Ex. 2 at 5 (confirming that the "prosecutor, your lawyer, and you have informed the Court" that the plea agreement would be for not more than 192 to 240 months)); (id., Ex. 3 (imposing sentence of 192 to 240 months)); see also Blackledge v. Allison, 431 U.S. 63, 73-74 (1977) (noting that representations of the defendant, his lawyer, and the prosecutor constitute a formidable barrier in collateral attacks of the plea agreement). The record also clearly establishes that Petitioner's plea was voluntary. Petitioner swore in open court that he entered his plea of his own free will and that he had not received any promises or threats to induce his plea. (Doc. 8, Ex. 2 at 4.) The sentencing judge specifically asked Petitioner if he had any questions about his

---

[6] Petitioner's trial counsel also certified under oath that he explained the nature and elements of the charges to Petitioner. (Doc. 8, Ex. 2 at 6.)

15

plea or the proceedings, and Petitioner responded that he did not. (Id.)

   As noted by the MAR judge, "[n]owhere in the files or written Transcript of Plea is there any evidence to support [Petitioner's] contentions." (Doc. 8, Ex. 9 at 4.) The record is also clear that Petitioner knowingly and voluntarily waived his right to challenge the evidence against him or otherwise mount any defense or challenge the sufficiency of the evidence and allegations, and instead accepted the terms of his guilty plea and the accompanying sentence. (See generally id., Ex. 2); see also Parke v. Raley, 506 U.S. 20, 29 (1992) (noting that a guilty plea results in waiver of the right to confront one's accusers and the privilege against self-incrimination). As such, the MAR court did not unreasonably apply clearly established federal law when it determined that there was no ineffective assistance of counsel, because the record facially establishes that Petitioner received the advice of counsel and was fully aware of the terms and consequences of his voluntary plea.

   Further, the court also finds that the MAR court did not unreasonably apply clearly established federal law when it found there was no ineffective assistance of counsel based on failure of Petitioner's attorney to object to lifetime satellite-based monitoring. Because Petitioner pleaded guilty to an aggravated

16

offense, see N.C. Gen. Stat. § 14-208.6(1a); State v. Clark, 714 S.E.2d 754, 762-65 (N.C. Ct. App. 2011), the satellite-based monitoring requirement was mandatory. See N.C. Gen. Stat. 14-208.40A(c). As such, Strickland's prejudice prong could not be satisfied based on counsel's failure to object.

Next, Petitioner's claim that his counsel was ineffective for failing to invoke his rights under the Vienna Convention is meritless. Petitioner's claim is ostensibly based on Article 36 of the Vienna Convention on Consular Relations,[7] which provides that individuals detained in a foreign country shall be informed that they may request the assistance of their country's consulate and that consular officers may visit detained individuals in prison. See Vienna Convention on Consular Relations, art. 36, Apr. 24, 1963, 21 U.S.T. 77, 100-101. Petitioner, a Mexican national, objected in his MAR that he did not receive a "consul visit," but did not explain the basis or circumstances giving rise to this grievance. His allegations in federal court as to this claim are similarly vague and conclusory. Further, Petitioner does not identify any prejudice he suffered as the result of his attorney not invoking Article 36. Therefore, the MAR court was not unreasonable in

---

[7] The United States has signed and ratified the Vienna Convention on Consular Relations. Garcia v. Texas, 131 S. Ct. 2866, 2868 (2011) (Breyer, J., dissenting).

determining that the <u>Strickland</u> standard was not satisfied in this instance.

Finally, Petitioner's claim for ineffective assistance of counsel based on a failure to obtain a Spanish language interpreter approved by the Administrative Office of the Courts ("AOC") is baseless. The MAR court found that Ms. Karin R. Vicard, a Spanish language interpreter approved by the AOC, provided translation services at the plea hearing. (Doc. 8, Ex. 9 at 3.) Additionally, Petitioner independently certified that he could understand all terms and consequences of his plea and that they were accurate when read by the court. (<u>Id.</u>, Ex. 2 at 6 (stating, in English and Spanish, that "I have read or have heard all of these questions and understand them. The answers . . . are true and accurate . . . The conditions of the plea as stated . . . are accurate"; Petitioner's signature appears under this declaration).) Accordingly, the MAR court did not unreasonably apply clearly established federal law in concluding that there was no ineffective assistance of counsel based on counsel's failure to obtain an AOC-approved interpreter.

In sum, the record clearly establishes that Petitioner knowingly entered into his guilty plea and was made fully aware of its consequences and terms, with the full benefit of counsel and a Spanish language interpreter. The court thus cannot say that the MAR court unreasonably applied clearly established

18

federal law when it found that Petitioner's Sixth Amendment claims did not rise to the standards of <u>Strickland</u> and <u>Lockhart</u>.

### 3. Due Process Violations

Petitioner also generally asserts that his guilty plea was in violation of due process because it was unknowing and involuntary. Many of Petitioner's allegations relating to this claim are the same as those asserted in his ineffective assistance of counsel claim. However, to the extent that Petitioner raises separate due process violations, those claims are denied.

Pursuant to due process requirements established by the United States Supreme Court, a guilty plea must be entered into voluntarily and intelligently, and a defendant must be fully informed of the direct consequences of the plea. <u>Brady v. United States</u>, 397 U.S. 742, 755 (1970). As discussed above, <u>see</u> <u>supra</u> Part II.C.2, the Transcript of Plea in this case (Doc. 8, Ex. 2) establishes that Petitioner, under oath, waived his constitutional rights, swore that no one made any promises or threatened him in any way to induce his plea, understood that his plea subjected him to a sentence between 192 to 240 months,[8] and understood the maximum punishment and the charges against him. Further, Petitioner also independently certified that he

---

[8] This sentence, which Petitioner swore he was aware of, was that actually imposed by the superior court. (Doc. 8, Ex. 3.)

understood the terms of the plea and the proceedings. (Id. at 6.)

In sum, Petitioner has failed to overcome the "formidable barrier" established by his prior sworn statements and independent certification, and thus the MAR court did not unreasonably apply clearly established federal law in denying Petitioner's due process claims. See Blackledge, 431 U.S. at 74 ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal.").[9]

### 4. Lifetime Satellite-Based Monitoring as Cruel and Unusual Punishment and Violative of Due Process[10]

Petitioner's final claim in his habeas petition purports to allege due process and Eighth Amendment (cruel and unusual punishment) violations relating to the imposition of satellite-

---

[9] Further, there is no due process violation based on Petitioner's lack of access to an AOC-certified Spanish language interpreter because, as discussed above, the MAR court found that Petitioner did in fact have access to such an individual during his guilty plea. (See Part II.C.2.)

[10] This claim may not have been exhausted before the state court. Petitioner did not specifically argue due process or the Eighth Amendment in his MAR claim relating to satellite-based monitoring; instead, he only alleged that the imposition of this requirement was "erroneous in law." (Doc. 8, Ex. 7 at 18.) However, even if the claim was not exhausted, thus resulting in a so-called "mixed petition," the court still chooses to dispose of the claim on the merits. See 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); accord Rhines v. Weber, 544 U.S. 269, 277 (2005).

based monitoring. However, much of Petitioner's argument is confined to asserting that the imposition of such monitoring was erroneous under North Carolina law. This court is unable to grant a habeas writ on perceived errors of state law. Pulley, 465 U.S. at 41.

But to the extent Petitioner claims that these alleged errors raise a constitutional concern, he is mistaken. Pursuant to N.C. Gen. Stat. § 14-208.6(1a), Petitioner's conviction for first-degree rape of a child is considered an "aggravated offense." See Clark, 714 S.E.2d at 762-65. Accordingly, N.C. Gen. Stat. 14-208.40A authorized the imposition of a lifetime of satellite-based monitoring, and this condition is an appropriate civil regulatory measure designed to protect the public. See generally State v. Bowditch, 364 N.C. 335, 700 S.E.2d 1 (2010) (North Carolina's satellite-based monitoring program is regulatory and not punitive); see also Smith v. Doe, 538 U.S. 84, 100 (2003) (Alaska Sex Offender Registration Act, which imposed lifetime registration requirements, was non-punitive). This court cannot say that North Carolina's satellite-based monitoring program implicates due process or Eighth Amendment concerns when properly imposed as part of a non-punitive scheme to the protect the public. Cf. Smith v. Kimbhal, 421 F. App'x 377, 380 (5th Cir. 2011) (per curiam) (noting that the Supreme Court has not identified a protected liberty interest in not

21

having electronic monitoring as part of mandatory supervised release); <u>Ferguson v. Dier-Zimmel</u>, 809 F. Supp. 668, 670 (E.D. Wis. 1992) (stating that electronic monitoring authorized by Wisconsin law did not constitute cruel and unusual punishment). Therefore, because Petitioner's claim is meritless, it will be dismissed.

## III. CONCLUSION

For the reasons stated,

IT IS THEREFORE ORDERED AND ADJUDGED that Respondents' motion for summary judgment (Doc. 6) is GRANTED and that the claims raised in the habeas petition (Doc. 2) are DENIED.

Finding neither a substantial issue for appeal concerning denial of a constitutional right affecting the conviction nor a debatable procedural ruling, the court denies a certificate of appealability.

/s/ Thomas D. Schroeder
United States District Judge

March 27, 2013

22